# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:   WICZEK, STEPHEN JOHN
         WICZEK, DONNA LORRAINE                         Chapter 7
                                                  Bky. Case No. 10-51280
                          Debtors.


Terri A. Running, Trustee,

                          Plaintiff,
                                                  Adv. No. _____

         v.

WICZEK, STEPHEN JOHN
WICZEK, DONNA LORRAINE
                          Defendants.


# COMPLAINT TO DENY DISCHARGE

Plaintiff, for her complaint against Defendants Stephen John Wiczek and Donna Lorraine Wiczek (Debtors), states and alleges as follows:

1. Terri A. Running is the duly qualified and acting Trustee in this case.
2. This is an action seeking denial of discharge of the Debtors pursuant to 11 U.S.C. § 727.
3. This action is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2). This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.
4. This bankruptcy case was commenced by the filing of a voluntary petition (joint) on September 14, 2010.
5. The Debtors' schedules and statement of financial affairs were also filed with this Court on September 14, 2010.
6. Among others, the following events have occurred in connection with the bankruptcy case: a section 341 meeting (not concluded) was held on November 4, 2010, and a Rule 2004 examination (again, not concluded) commenced on February 4, 2011.
7. There are several material omissions and false statements contained in the Debtors' schedules and statement of affairs. An outline of such omissions and false statements, as well as omissions and false statements made in the section 341 meeting, follows:

a. $32,000 was wire-transferred by the Debtors (from Lakewood Bank -3209) on the day of the bankruptcy filing to Nisswa Marine, Inc. Nisswa Marine, Inc., is a corporation entirely owned by the Debtors and controlled by the husband Debtor, and was emerging from Chapter 11 pursuant to a plan of reorganization confirmed less than one month before the filing of this case. This transfer is not reported on the Debtors' statement of financial affairs.
b. $9,467.69 was wire-transferred from one of the Debtors' bank accounts (Lakewood Bank -3355) on September 14, 2010, to Wells Fargo. Upon information and belief, Wells Fargo is the bank used by Nisswa Marine, Inc. (The wire transfer referred to in subparagraph a above also went to Wells Fargo.) This transfer is not reported in the Debtors' statement of financial affairs.
c. The Debtors wire-transferred $30,434.45 (from Lakewood Bank -3209) to Harris Bank on September 9, 2010. This transfer was to pay a trade creditor (J.C. Schultz) of their proprietorship named Falls Flag Source. On September 10, 2010, the Debtors wire-transferred (from Lakewood Bank -3209) $56,998.86 to pay another Falls Flag Source trade creditor, Uncommon USA. The transfers were not reported in the Debtors' statement of financial affairs.
d. Debtors were specifically asked by the Trustee at the section 341 meeting whether there were any transfers in addition to the $32,000 to Nisswa Marine that were not reflected in the Debtors' statement of financial affairs. They affirmed there were no such other unscheduled transfers.
e. No trade creditors, employees, or contractors of Falls Flag Source are set forth in the Debtors' schedules, notwithstanding that there were prepetition claims from one or more of these that were paid by the Debtors postpetition.
f. At the section 341 meeting, the husband Debtor was questioned by Northern National Bank n/k/a Frandsen Bank & Trust's (Frandsen) lawyer about the accuracy of his year-to-date wages (at the time of the filing of the petition) stated in the statement of financial affairs. The $15,384.62 amount in the statement of financial affairs is a gross understatement. The actual amount is approximately $111,538.50.
g. Debtors' Schedule I reflects monthly salary for the husband Debtor as $7,692.31. This was grossly understated. $12,692.30 per month was reflected in a Nisswa Marine paycheck stub for the husband Debtor, and a Nisswa Marine payroll journal reflected $13,333.33 per month to the husband Debtor.
h. The Debtors' statement of financial affairs, item 2, reports $2,799 in 2009 interest/refunds and $379 in 2008 interest/capital gain. The Debtors failed to report their actual federal and state tax refunds (for 2009) in the amounts of $40,704 and $13,497, respectively.
i. The Debtors failed to schedule as an asset a counterclaim against Northern National Bank, in which they claim damages in excess of $50,000. The counterclaim came to light in the section 341 through the questioning of Frandsen's counsel. The Debtors continue to pursue the counterclaim.

j. A payment of $12,000 on July 29, 2010, to Gull Lake Properties, LLC, is reported in item 3 in Debtors' statement of financial affairs. Gull Lake Properties, LLC, is an entity that the husband Debtor claims a 30% interest in. At the section 341 meeting, the Debtors reported that their grown sons Brent and Jeremy Wiczek also hold interests in Gull Lake Properties, LLC, along with the husband Debtor's friend Jim McBride. At the section 341 meeting, the husband Debtor stated that the $12,000 payment was actually made directly to Profinium Financial, a creditor of Gull Lake Properties, LLC.

k. The Debtors made at least one transfer to or for the benefit of Gull Lake Properties, LLC, (an "insider" within the meaning of 11 U.S.C. § 101(31))that is not reflected on the statement of financial affairs: a 2/10/10 wire transfer from the Debtors' Lakewood Bank account -4651 in the amount of $9,509.12 to Profinium Financial Gull Lake Properties.

l. In Schedule J, line 13.b, the Debtors state $4,495.00 as a monthly expense for Gull Lake Properties, LLC – Debt Service. The husband Debtor was extremely unclear about how much he has paid to Profinium in his section 341 meeting, saying maybe $6,000 to $7,000 month, but also indicating variability. The documents provided by the Debtors in connection with the Rule 2004 examination do not provide sufficient detail to discern transfers made to or for the benefit of Gull Lake Properties, LLC (aside from the noted wire transfer).

m. Although there are several large checks reflected in the bank statements for Lakewood Bank account -4651, no check register was produced for the account (nor for an earlier checking account with Northern National Bank). The wife Debtor testified at the Rule 2004 examination that registers have not been kept for years and that duplicate checks have been discarded. Based on the information outlined in this subparagraph, the Plaintiff alleges that there are transfers made to or for the benefit of Gull Lake Properties, LLC, that should have been, but are not, reported in the Debtors' statement of financial affairs, but that the times and amounts of such transfers are not fully determined.

n. Profinium Financial was not scheduled as a creditor in the Debtors' schedules, despite the husband Debtor's section 341 testimony that Gull Lake's debt was personally guaranteed.

o. The husband Debtor also testified that he was in debt to his friend Jim McBride in an amount between $800,000 and $900,000. This debt is not reflected in the Debtors' Schedules.

p. In Debtors' Schedule B, the account balance for "Checking – Lakewood Bank (Falls Flags)" is stated to be $750. However, the last amount reflected for September 14, 2010, in Lakewood Bank account -3209 is $1,252.08. The amount listed for Savings – Account -3355 Lakewood Bank is stated as $500. This is the account from which the $9,467.49 wire transfer was made to Wells Fargo on September 14, 2010. This transfer left a zero balance in the account. A "closing withdrawal" of .00 is noted for 9/14/10, which indicates that this account was closed on that date. The closing of this account is not reported in the Debtors' statement of financial affairs.

q. Two of the accounts listed in Debtors' Schedule B (with balances noted as $350 and $325 are in the name of the wife Debtor, each for another). However, no property owned by another that the debtor holds or controls is listed in the Debtors' statement of financial affairs.

8. Other than a copy of $50,000 promissory note to Northern National Bank (relative to Falls Flag Source), no promissory notes, mortgages, security agreements, or guaranties were produced, despite a request therefor in connection with the Rule 2004 examination. Similarly, no tax returns for Nisswa Marine, Inc., Nisswa Properties, LLC, or Gull Lake Properties, LLC, were produced, despite request therefor.
9. In their Schedules B and C, the Debtors claim that their interests in Nisswa Marine, Inc., Nisswa Properties, LLC, and Gull Lake Properties, LLC, are worth nothing. In Schedule B, they claim the sole proprietorship (Falls Flag Source) has no value and in Schedule C claim exemptions worth only $2 in total for Falls Flag furnishings, fixtures, equipment, and inventory. All three businesses continue to be operated by one or both of the Debtors, including Falls Flag Source. With respect to Falls Flag Source, the Debtors have continued to operate it and to pay the wife Debtor and the Debtors' daughter from it, and have consumed assets owned prepetition in doing so.
10. The Plaintiff alleges that the Debtors, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code, have transferred, removed, or concealed property of the Debtors within one year before the date of the filing of the petition, such that discharge should be denied under § 727(a)(2)(A) of the Bankruptcy Code.
11. The Plaintiff alleges that the Debtors, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code, have transferred, removed, or concealed property of the estate, through the continued operation of Falls Flag Source using prepetition assets, after the filing of the petition, such that discharge should be denied under § 727(a)(2)(B) of the Bankruptcy Code.
12. The Plaintiff alleges that the Debtors have knowingly and fraudulently made false oaths or given false accounts in their bankruptcy schedules and in their section 341 meeting testimony, such that discharge should be denied under § 727(a)(4)(A) of the Bankruptcy Code.
13. The Plaintiff alleges that the Debtors have knowingly and fraudulently withheld documents to which the Trustee is entitled, relating to the Debtors' property, such that discharge should be denied under § 727(a)(4)(D) of the Bankruptcy Code.
14. The Plaintiff alleges that the Debtors have failed to explain satisfactorily, before denial of discharge, loss in assets or deficiencies in assets to meet the Debtors' liabilities, such that discharge should be denied under § 727(a)(5) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks an order of this Court granting the following relief:

1. That the discharge of Debtors be denied pursuant to the provisions of 11 U.S.C. § 727;
2. That the Court grant such other and further relief as may be just and equitable.

| | |
|---|---|
| | **Zerby Law Firm, P.C.** |
| Dated: February 12, 2011 | /e/ Paul G. Zerby, Jr. |
| | Paul G. Zerby, Jr. (No. 213949) |
| | 125Main Street SE, Suite 339 |
| | Minneapolis, MN 55414 |
| | |
| | (612) 279-2658 |
| | (612) 279-2659 Facsimile |
| | |
| | Attorney for Plaintiff |