UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

_____

BKY No. 10-51280

In re:

Stephen John Wiczek and Donna
Lorraine Wiczek,

        Debtors.

_____

Terri A. Running, Trustee,

        Plaintiff,

vs.

Stephen John Wiczek and Donna
Lorraine Wiczek,

        Defendants.

_____

ADV No. 11-5006

**AMENDED COMPLAINT**

Plaintiff, for her Complaint against Defendants Stephen John Wiczek and Donna Lorraine Wiczek (collectively, the "**Defendants**," "**Wiczeks**" or "**Debtors**"), states and alleges as follows:

1.      Terri A. Running is the duly qualified and acting Trustee in this case.

2.      This is an action seeking a denial of discharge of the Wiczeks pursuant to 11 U.S.C. §727.

3.      This Court has jurisdiction over this proceeding pursuant to 11 U.S.C. §727, 11 U.S.C. §§541 and 542, 28 U.S.C. §157 and 28 U.S.C. §1334.

4.      This case was commenced by the filing of a voluntary petition under Chapter 7 on September 14, 2010. The Debtors' schedules and statement of financial affairs were also filed with this Court on September 14, 2010.

5.     Nisswa Marine, Inc., is a corporation owned by the Wiczeks and controlled by Defendant Stephen Wiczek.  On June 8, 2009, Nisswa Marine, Inc. filed a Chapter 11 bankruptcy petition.  A plan of reorganization for Nisswa Marine, Inc. was confirmed on August 19, 2010.

6.     Not later than November 2009, the Wiczeks personally retained and began paying their attorneys, Gregory Anderson and his law firm of Anderson, Larson, Hanson & Saunders, PLLP ("**ALHS**")  who filed the Wiczeks' bankruptcy petition in this case.  In the year prior to filing, the Wiczeks paid ALHS and Anderson at least $40,000.00.  At least $10,000.00 was paid to ALHS in the 90 days prior to filing.

7.     On September 9, 2010, the Wiczeks completed their credit counseling.

8.     Prior to and after filing their personal Chapter 7 bankruptcy petition, the Debtors engaged in a series of actions and transactions designed to transfer, hide, and conceal assets from creditors and the Trustee.  The Wiczeks also purposefully omitted from their bankruptcy schedules certain assets, creditors and transfers.

9.     On September 9, 2010, two days after completing credit counseling and five days before filing bankruptcy, Defendant Stephen Wiczek held $131,117.92 in an account at Lakewood Bank ending in account numbers 3209.  This account was held by Defendant Stephen Wiczek doing business as "Falls Flag Source."  By the date of his bankruptcy filing, Defendant Steve Wiczek had made transfers out of that account of over $129,000.00, including a $32,000.00 wire transfer to hide monies at his company, Nisswa Marine, Inc., which was made just hours before filing.

10.     In addition to "banking" the concealed $32,000.00 at Nisswa Marine just hours prior to filing bankruptcy, the Wiczeks also concealed at least $16,000.00 of assets in the form of payments owed by Medica to Stephen Wiczek.  Defendant Stephen Wiczek has a purported "consulting agreement" with Medica under which he is entitled to receive $4,000.00 per month.  At

the time of the filing, Defendant Stephen Wiczek had not been paid for the months of May through September 14, 2010, resulting in an asset having a value of at least $17,866.67. Instead of disclosing the existence of that asset, the Wiczeks falsely stated, at item 1 of their statement of financial affairs, that Defendants had received $36,000.00 "to date," (which would be nine months of $4,000.00 monthly payments). The Wiczeks did not disclose the existence of the unpaid $17,866.67. At the §341 meeting, held on November 4, 2010, Defendant Stephen Wiczek testified that he had disclosed all of his assets. That testimony was false. He knew that he had not disclosed the entitlement to payment from Medica.

11. On November 10, 2010, just six days after falsely testifying that he had scheduled all of his assets, Defendant Stephen Wiczek prepared a $16,000.00 invoice to send to Medica. A copy of the invoice is attached as Exhibit A. All of the monies represented by that invoice were property of the bankruptcy estate. On November 22, 2010, Medica issued a $16,000.00 check to Defendant Stephen Wiczek. A copy of that check is attached hereto as Exhibit B. Defendant Stephen Wiczek cashed the check and knowingly converted $16,000.00 of bankruptcy estate assets.

12. Later, in 2011, Defendant Stephen Wiczek obtained another $16,000.00 from Medica of which a portion, $1,866.67, was property of the bankruptcy estate. See, Exhibits C and D.

13. Among other things, the Wiczeks engaged in the following actions in preparation for their bankruptcy filing:

    a.     $32,000 was wire-transferred by the Wiczeks (from Lakewood Bank - 3209) on the day of the bankruptcy filing to Nisswa Marine, Inc. Nisswa Marine, Inc. is a corporation entirely owned by the Wiczeks and controlled by the husband debtor, and had a Chapter 11 plan of reorganization confirmed less than one month before the filing of this case.

    b.     $9,467.69 was wire-transferred from a bank account held in the name of Donna Wiczek Lakewood Bank - 3355) on September 14, 2010, to Wells

Fargo for the benefit of Nisswa Marine, Inc.  Upon information and belief, Wells Fargo is the bank used by Nisswa Marine, Inc.

c.  Stephen Wiczek wire-transferred $30,434.45 (from Lakewood Bank - 3209) to Harris Bank on September 9, 2010.  This transfer was to pay a trade creditor (J.C. Schultz) of his proprietorship named Falls Flag Source.

d.  On September 10, 2010, Stephen Wiczek wire-transferred (from Lakewood Bank - 3209) $56,998.86 to pay another Falls Flag Source trade creditor, Uncommon USA.

e.  The Wiczeks paid to Gregory Anderson/ALHS Law Firm at least $10,000 in the 90 days prior to filing.

f.  The Wiczeks paid to Profinium Financial, Inc. on August 31, 2010, the amount of $10,700.

COUNT 1
False Oaths in Original Schedules 727(a)(4)

14.  Plaintiff realleges and reaffirms paragraph 1 through 14 above.

15.  Defendants knowingly and fraudulently, and in connection with this bankruptcy case made material omissions, false oaths and accounts in his original schedules and statement of financial affairs and concealed assets including, but not limited to, the following:

A.  Statement of Financial Affairs.

16.  The Wiczeks' original statement of financial affairs, at item 3(a), disclosed only one transfer which they described as a transfer to "Gull Lake Properties, LLC" of $12,000.00 on July 29, 2010.  That statement was false.  The single $12,000.00 payment disclosed was not made to Gull Lake Properties, LLC, but was made to Profinium Financial.  Additionally, the Wiczeks concealed at least the following payments to creditors made in the 90 days prior to filing, some of which were made the very day of filing:

i.  Harris Bank, N.A. - 9/9/10 - $30,434.45
ii.  Uncommon USA - 9/10/10 - $56,998.86
iii.  Profinium Financial - 6/24/10 - $6,260.00

4

  vi.  Profinium Financial - 8/31/10 - $10,700.00
  vi.  ALHS - $10,000
  vii.  Payments to other creditors to be proven at trial

17. A payment of $12,000.00 on July 29, 2010 to Gull Lake Properties, LLC, is reported in item 3 in debtors' statement of financial affairs. The husband debtor claims a 30% interest in Gull Lake Properties, LLC. At the section 341 meeting, the debtors reported that their grown sons, Brent and Jeremy Wiczek, also hold interests in Gull Lake Properties, LLC, along with the husband debtor's friend Jim McBride. At the section 341 meeting, the husband debtor stated that the $12,000.00 payment was actually made directly to Profinium Financial, a creditor of Gull Lake Properties, LLC.

18. At item 1 of their statement of financial affairs, the Debtors falsely stated that Defendant Stephen Wiczek had received $36,000.00 year-to-date from Medica as independent consulting. This statement was false because he had not received the entire $36,000.00 at the time of filing. He was entitled to have received at least $36,000.00 as of the bankruptcy filing date, but had only received $20,000.00.

19. The Debtors had received in excess of $54,000.00 in the year 2010 in federal and state income tax refunds. They did not disclose that receipt at item 2 of the statement of financial affairs.

20. At item 3(c) of the statement of financial affairs, the Debtors represented that no payments had been made in the year prior to filing "to or for the benefit of creditors who are or were insiders." That statement was false. In the year prior to filing, the Wiczeks made at least the following payments to the following family members:

  i.  Jeremy Wiczek - $600.00, December, 2009
  ii.  Brent Wiczek - $1,500.00, May, 2010

These payments to family members had to be disclosed at item 3(c), item 7, or item 10 of the statement of financial affairs. The Wiczeks did not disclose them anywhere.

Further, the Wiczeks made at least the following payments for the benefit of Gull Lake Properties, LLC, an insider:

       i.       Profinium Financial - 2/2/10 - $4,834.39
      ii.       Profinium Financial - 2/10/10 - $9,509.12
     iii.       Profinium Financial - 4/30/10 - $2,900.00
     iv.       Profinium Financial - 5/26/10 - $4,000.00
      v.       Profinium Financial - 6/24/10 - $6,260.00
     vi.       Profinium Financial - 7/29/10 - $12,000.00
    vii.       Profinium Financial - 8/31/10 - $10,700.00

21.     At item 10 of the statement of financial affairs, the Wiczeks disclosed no "other transfers" in the two years prior to filing. That statement is false as they: (a) Transferred at least $32,000.00 in cash to Nisswa Marine, Inc., just hours before the bankruptcy filing; (b) They transferred $9,462.69 to Wells Fargo Bank just hours before their bankruptcy filing; and, (c) Defendant Stephen John Wiczek had pledged 20% of his stock in Nisswa Marine to Pat Bartus in April, 2009, to secure a $300,000.00 loan obtained from Bartus.

22.     At item 11 of the statement of financial affairs, the Wiczeks did not disclose that they had, in fact, closed bank accounts in response to the inquiry.

23.     At item 1 of the statement of financial affairs, the Wiczeks stated that their total "YTD" income was $59,384.62. That statement was false. In fact, their total year to date income at that point was at least $155,358.00.

24.     At item 9 of the statement of financial affairs, Defendants stated that "all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under bankruptcy law or preparation of a petition

in bankruptcy within one year immediately preceding the commencement of this case, was $1,029.00. That statement was false.

25.    At item 14 of the statement of financial affairs, the Debtors did not disclose that they maintained bank accounts in the name of children and grandchildren.

26.    At Schedule F, the Wiczeks intentionally concealed and did not schedule at least the following unsecured creditors:

    a.    Pat Bartus. Upon information and belief, the Wiczeks owed Bartus in excess of $100,000.00 at the time of filing. In the year prior to filing, they paid Bartus at least $50,000.00, with the second $25,000.00 payment having been made to Bartus on or about April 1, 2010. In December, 2010 after falsely testifying at the §341 meeting that they had listed all creditors, the Wiczeks made another $5,000.00 payment to Bartus.

    b.    No trade creditors, employees or contractors of Falls Flag Source are set forth in the debtor's Schedule F, notwithstanding that there were pre-petition claims that were paid by the debtors post-petition.

    c.    Profinium Financial was not scheduled as a creditor in the debtors' schedules, despite the husband Debtor's section 341 testimony that Gull Lake's debt was subject to a personal guarantee.

    d.    Stephen Wiczek also testified that he was in debt to his friend, Jim McBride, in an amount between $800,000.00 and $900,000.00. This debt is not reflected in the Debtors' schedules.

27.    At Schedule B, the Wiczeks did not disclose and intentionally concealed at least the following assets:

    a.    $32,000.00 that they had concealed at Nisswa Marine, Inc., just hours prior to filing bankruptcy.

    b.    Defendant, Stephen John Wiczek, was owed at least $16,000.00 by Medica pursuant to a "Consulting Agreement" that paid him $4,000.00 per month. At the time of filing, he had received payments only through April, 2010. This concealed asset was converted by the Wiczeks after the bankruptcy filing.

     c.     The Debtors failed to schedule as an asset in Schedule B a counterclaim against Northern National Bank, in which they claim damages in excess of $50,000.00.

28.     Debtors' Schedule I reflects monthly salary for the husband debtor as $7,692.31. This was grossly understated as $12,692.30 per month was reflected in a Nisswa Marine paycheck stub for the husband debtor, and a Nisswa Marie payroll journal reflected $13,333.33 per month to the husband debtor.

COUNT 2

FALSE OATHS IN AMENDED SCHEDULES AND STATEMENT OF FINANCIAL AFFAIRS §727(a)(4)

29.     Plaintiff reaffirms and realleges paragraphs 1 through 27 above.

30.     On March 1, 2011, after the Trustee had commenced this adversary proceeding against the Wiczeks, providing the Wiczeks with knowledge that the Trustee had learned of certain false oaths and fraudulent actions of the Wiczeks, the Wiczeks filed amended schedules and an amended statement of financial affairs. The Wiczeks, knowingly and fraudulently and in connection with this bankruptcy case, made material omissions, false oaths and accounts in those amended schedules and statement of financial affairs and concealed assets, including, but not limited to, the following:

     a.     The Wiczeks did not disclose at Amended Schedule B that defendant Stephen John Wiczek was owed at least $17,866.67 by Medica at the time the bankruptcy was filed.

     b.     In the 90 days prior to filing, the debtors had paid at least $10,000.00 to ALHS. Those transfers, or most of those transfers, are not disclosed at item 3 of the statement of financial affairs.

     c.     At item 1 of their amended statement of financial affairs, the Debtors falsely stated that Defendant Stephen Wiczek had received $36,000.00 YTD from Medica as independent consulting. This amended statement was false because he had not received the entire $36,000.00 at the time of filing. He was entitled to have received at least $36,000.00 as of the bankruptcy filing date, but had only received $20,000.00.

d.      At item 3(c) of the amended statement of financial affairs, the Debtors represented that no payments had been made in the year prior to filing "to or for the benefit of creditors who are or were insiders." That statement was false. In the year prior to filing, the Wiczeks made at least the following payments to the following family members:

         i.      Jeremy Wiczek - $600.00, December, 2009
         ii.      Brent Wiczek - $1,500.00, May, 2010

     These payments to family members had to be disclosed at item 3(c), item 7, or item 10 of the statement of financial affairs. The Wiczeks did not disclose the payments anywhere.

e.      At item 10 of the amended statement of financial affairs, the Debtors disclosed only the $32,000.00 cash transfer to Nisswa Marine that they knew that the trustee had discovered. The Wiczeks did not disclose that Stephen John Wiczek had pledged 20% of his stock in Nisswa Marine to Pat Bartus in April, 2009 to secure a $300,000.00 loan obtained from Bartus.

f.      At item 9 of the amended statement of financial affairs, the defendant stated that "all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case, was $1,029.00. That statement was false.

### COUNT 3
### FRAUDULENT TRANSFERS 11 U.S.C. §727(a)(2)(A)

31.      Plaintiff realleges and reaffirms paragraph 1 through 29 above.

32.      Within the year prior to filing, and after commencement of this case, Defendants transferred or permitted to be transferred or concealed, with the intent to hinder, delay or defraud creditors or the trustee of this estate various assets including the following:

a.      On September 14, 2010, just prior to filing their bankruptcy petition, the Wiczeks transferred $32,000.00 to their solely owned company, Nisswa Marine, Inc., in order to preserve and conceal the $32,000.00 asset from the trustee. The transfer of that $32,000.00 to be held by their company was a transfer made with the intent to hinder, delay or defraud creditors and the trustee.

b.     On September 14, 2010, just hours prior to their bankruptcy filing, the Wiczeks transferred $9,467.69 to Nisswa Marine, Inc.

c.     On September 9, 2010, two days after completing their credit counseling, the debtors transferred $30,434.45 to J.C. Schultz, a creditor. Although this payment was to a creditor, the payment was made for the purpose of putting the funds out of reach of the trustee in this case to the detriment of other creditors.

d.     On September 10, 2010, three days after completing their credit counseling, the Wiczeks transferred $56,998.86 to "Uncommon USA," a creditor. Although this payment was to a creditor, the payment was made for the purpose of putting the funds out of reach of the trustee in this case to the detriment of other creditors.

e.     After commencement of this bankruptcy case, Defendant Stephen John Wiczek knowingly concealed and caused to be transferred to himself pre-petition monies owed by Medica, which assets were property of the bankruptcy estate, in a total amount exceeding $16,000.00.

COUNT 4
FALSE OATHS AT §341 MEETING §727(a)(4)

33.     Plaintiff realleges and reaffirms paragraph 1 through 31 above.

34.     At the Chapter 7 §341 meeting the Wiczeks knowingly and fraudulently made various false statements while under oath. Those false oaths include, but are not limited to the following underlined portions of the testimony contained in the attached Exhibit E at pages 3 and 4, 10 and 11, 13 and 14, 27 and 28.

TRUSTEE RUNNING: Did you read those papers before you signed them?
DONNA WICZEK: Yes.
STEPHEN WICZEK: Yes.
TRUSTEE RUNNING: Are you familiar with all of the information contained in those papers?
DONNA WICZEK: Yes.
STEPHEN WICZEK: Yes.
TRUSTEE RUNNING: Is it accurate?
DONNA WICZEK: Yes.
STEPHEN WICZEK: Yes.
TRUSTEE RUNNING: Any mistakes you've noticed?
STEPHEN WICZEK: No.

TRUSTEE RUNNING: Have you listed all of your assets and all of your debts?

DONNA WICZEK: <u>Yes</u>.

STEPHEN WICZEK: <u>Yeah</u>.

pp. 3-4.

.   .   .

TRUSTEE RUNNING:    In the 90 days prior to filing, did you sell, transfer, or give anything away?

STEPHEN WICZEK: I transferred, um, money into the Nisswa Marine from Falls Flag Source.

TRUSTEE RUNNING:  How much?

STEPHEN WICZEK:   39 or 40,000.  I don't - - I think that was it.  I have that here.

DONNA WICZEK: Thirty two.

STEPHEN WICZEK: Okay, 32 (inaudible).

TRUSTEE RUNNING: So the 32 went where?

STEPHEN WICZEK: Into our Chapter 11 company, Nisswa Marine.

TRUSTEE RUNNING: For what purpose?

STEPHEN WICZEK: <u>To keep the company in business</u>.

Page 11.

.   .   .

MR. SIGELMAN:   And so you maintain that you received just over $15,000 in wages from Nisswa Marine, year to date, from January 1st, 2010 to September 14, 2010, correct?

STEPHEN WICZEK: <u>I would say whatever's listed here should be correct</u>.

MR. SIGELMAN: All right.

DONNA WICZEK: <u>Yeah</u>.

STEPHEN WICZEK: You know that better than I do.

Page 13-14.

.   .   .

TRUSTEE RUNNING: In the 90 days prior to filing, did you pay any one creditor either $600 for consumer debt or $5,000 for a business debt?

STEPHEN WICZEK: I guess that would be yes then.

TRUSTEE RUNNING: Yep, the $12,000 payment.  Anything other than that, and the $32,000 payment?

STEPHEN WICZEK: <u>No</u>.

TRUSTEE RUNNING: Anything in addition to those?

11

STEPHEN WICZEK: <u>No</u>.

TRUSTEE RUNNING: Ma'am?

DONNA WICZEK: <u>No</u>.

TRUSTEE RUNNING: In the 90 days prior to filing, did you sell, transfer, or give anything away?

STEPHEN WICZEK: No.

DONNA WICZEK: No.

TRUSTEE RUNNING: In the year prior to filing, did you repay a friend, family member, or an affiliate - -

STEPHEN WICZEK: <u>No</u>.

DONNA WICZEK: <u>No</u>.

TRUSTEE RUNNING: - - on any indebtedness, other than what's already been admitted here at the hearing today?

DONNA WICZEK: <u>No</u>.

TRUSTEE RUNNING: Sir?

STEPHEN WICZEK: <u>No</u>, I said.

TRUSTEE RUNNING: In the six years prior to filing, did you sell, transfer, or give anything - -

STEPHEN WICZEK: No.

TRUSTEE RUNNING: I haven't asked the question. Affiliate, family member. Are you irritated, sir?

STEPHEN WICZEK: No.

TRUSTEE RUNNING: Okay. Friend, family member, or affiliate.

STEPHEN WICZEK: No.

DONNA WICZEK: No.

TRUSTEE RUNNING: Deeded away any property?

STEPHEN WICZEK: No.

TRUSTEE RUNNING: Paid anything?

DONNA WICZEK: No.

STEPHEN WICZEK: No.

COUNT 5

CONVERSION AND §549 RECOVERY

35.     Plaintiff realleges and reaffirms paragraphs 1 through 33 above.

36.     Defendants converted nonexempt bank account balances and accounts receivables in an amount to be provide at trial.

37.     The Plaintiff is entitled to recover the sum of $17,866.67 from the Defendants, together with other amounts proven at trial, pursuant to 11 U.S.C. §§549 and 550, and based upon the state law remedies of conversion and theft.

38.     Plaintiff realleges and reaffirms paragraphs 1 through 37 above.

39.     Defendant has committed a theft of bankruptcy estate property as detailed in Paragraphs 1-37 of this Complaint.

40.     Defendants are liable to the trustee for their conversion and theft of those monies pursuant to Minn. Stat. §604.14.

41.     Plaintiff seeks a money judgment against Defendants doubling the amount owed, resulting in a total amount owed by Defendants of at least $35,733.34.

COUNT 7
TREBLE DAMAGES

42.     Plaintiff realleges and reaffirms paragraphs 1 through 40 above.

43.     Defendants have committed a theft of bankruptcy estate property as detailed in Paragraphs 1-38 of this Complaint.

44.     The Plaintiff may recover treble damages pursuant to Minn. Stat. §548.05.

45.     The Plaintiff is entitled to a judgment in an amount equal to three times the amount owed, resulting in a total amount owed by Defendants of at least $53,600.01.

WHEREFORE, the Trustee seeks an order of this Court granting the following relief:

1.     That the discharge of the Wiczeks be denied pursuant the provisions of 11 U.S.C. §727.

2.     Entering judgment against Defendants, pursuant to Count 5 hereof, in an amount of not less than $17,866.67.

3.     Entering judgment against Defendants in an amount of not less than $35,733.34 pursuant to Count 6 hereof.

4.     Entering judgment against Defendants in an amount of not less than $53,600.01, pursuant to Count 7 hereof.

5.     That the Court grant such other and further relief as may be just and equitable.

**LEONARD, O'BRIEN,**
**SPENCER, GALE & SAYRE, LTD.**

/e/  Matthew R. Burton

Dated:  June 29, 2011          By:_____
Matthew R. Burton, #210018
100 South Fifth Street, Suite 2500
Minneapolis, Minnesota  55402
Telephone:  (612) 332-1030
Facsimile:  (612) 332-2740

ATTORNEYS FOR PLAINTIFF

439190

# Steve Wiczek

# INVOICE

24238 Smiley Rd
Nisswa, MN 56468
Phone (218)967-8200  Fax (218)963-4402

INVOICE #106
DATE: NOVEMBER 10, 2010

**TO:**
Medica

401 Carlson Parkway
Minnetonka, MN 55305
(952-992-8456

| DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|
| Consulting fees May | | | 4000.00 |
| Consulting fees June | | | 4000.00 |
| Consulting fees July | | | 4000.00 |
| Consulting fees August | | | 4000.00 |
| | | TOTAL | 16000.00 |

RECEIVED
NOV 1 9 2010

NOV 2 2 2010

EXHIBIT

A

 **Stops - Images - Search®**                                    Close

---

**Image**
**Image Front:**

| MEDICA. | Wells Fargo | 0000650801 |
|---|---|---|

PO Box 9310
Minneapolis, MN 55402          56-382/412          **DATE**
                                                  Nov 22, 2010

Pay  Sixteen Thousand Dollars And 00 Cents                 **AMOUNT**
                                                            $16,000.00

to the Order of:

    STEVE WICZEK
    2423B SMILEY RD
    PO BOX 645
    NISSWA, MN 56468

    ⑈0000650801⑈                    2840ч⑈

**Image Back:**

    LAKEWOOD BANK   NISSWA MN

    12/10/2010

---

**Item Details**
Amount:  $ 16,000.00
Check Number:  650801
Posting Date:  12/13/2010
As Of Date:  12/13/2010

Additional Item Details:  0000002 +000000004179183

Account Name:  **MEDICAHEALTPL**
Account Number:          **8404**
Routing Number:  24125382
Type Code/Description:  **475/CHECK PAID**
Item Sequence Number:  **8281775688**

Privacy, Security & Legal
© Copyright 2002 - 2011 Wells Fargo. All rights reserved.



**EXHIBIT**
**B**
tabbies

**Steve Wiczek**

24238 Smiley Rd
Nisswa, MN 56468
Phone (218)967-8200  Fax (218)963-4402

# INVOICE



INVOICE #107
DATE: FEBRUARY 23, 2011

**TO:**
Medica

401 Carlson Parkway
Minnetonka, MN 55305
(952-992-8456

| DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|
| Consulting Fees September | | | 4000.00 |
| Consulting Fees October | | | 4000.00 |
| Consulting Fees November | | | 4000.00 |
| Consutling Fees December | | | 4000.00 |
| | | | |
| | TOTAL | | 16000.00 |

PAID
MAR 0 2 2011
By

EXHIBIT
C

 ## Stops - Images - Search®

Close

---

**Image**

Image Front:

---

MEDICA.

Wells Fargo

**0000652653**

PO Box 9310
Minneapolis, MN 55402

56-382/412

DATE
Mar 2, 2011

AMOUNT
$16,000.00

Pay  Sixteen Thousand Dollars And 00 Cents

to the Order of:

STEVE WICZEK
24238 SMILEY RD
PO BOX 645
NISSWA, MN 56468

⑆0000652653⑆ ⑈    28404⑆

---

Image Back:

LAKEWOOD BANK   NISSWA MN

'3/7/2011

---

**Item Details**
Amount:  $ 16,000.00
Check Number:  652653
Posting Date:  03/08/2011
As Of Date:  03/08/2011

Account Name:  **MEDICAHEALTPL**
Account Number:       **9404**
Routing Number:  **24125382**
Type Code/Description:  **475/CHECK PAID**
Item Sequence Number:  **8285200146**

Additional Item Details:  **0000004 +000000002895677**

Privacy, Security & Legal
© Copyright 2002 - 2011 Wells Fargo. All rights reserved.



1           US BANKRUPTCY COURT

2        DISTRICT OF MINNESOTA (DULUTH)

3        BANKRUPTCY PETITION #: 10-51280

4   - - - - - - - - - - - - - - - - - - -

5  In re: Stephen John Wiczek and

6        Donna Lorraine Wiczek,

7                   Debtors,

8   - - - - - - - - - - - - - - - - - - -

9

10

11

12           TRANSCRIPTION OF HEARING

13                 FROM CD

14

15

16

17

18

19

20

21

22

23

24    TRANSCRIBED BY:  Kay Lynn Hinsch, RPR

25         www.paradigmreporting.com

1        Transcription of the CD of the Hearing of

2  Stephen Wiczek and Donna Wiczek, by Kay Lynn Hinsch,

3  Registered Professional Reporter and Notary Public



EXHIBIT

E

4  of and for the State of Minnesota.

5                          APPEARANCES

6  On Behalf of the Bankruptcy Court:

7      TERRI A. RUNNING, ESQUIRE

8      P.O. Box 583454

9      Minneapolis, Minnesota 55458

10 On Behalf of Stephen John Wiczek and Donna Lorraine
   Wiczek:
11     GREGORY R. ANDERSON, ESQUIRE

12     Anderson Larson Hanson & Saunders

13     331 Professional Plaza

14     331 Third Street Southwest

15     Willmar, Minnesota 56201

16 On Behalf of Franzen Bank & Trust:

17     SAMUEL J.H. SIGELMAN, ESQUIRE

18     Lindquist & Vennum, PLLP

19     4200 IDS Center

20     80 South Eighth Street

21     Minneapolis, Minnesota 55402

22 ALSO PRESENT:  Stephen John Wiczek

23                 Donna Lorraine Wiczek

24     NOTE:  The original transcript will be
   delivered to Matthew R. Burton, Esquire, pursuant to
25 the applicable Rules of Civil Procedure.
                                                    3


1              P R O C E E D I N G S

2      (Whereupon, the following transcript is a

3  transcription of a CD.)

4          TRUSTEE RUNNING:  This is case number

5  10-51280 --

6          UNIDENTIFIED SPEAKER:  I'll just say it

7  again whenever you're done.

8          TRUSTEE RUNNING:  Stephen and Donna Wiczek

9  were present and represented by their attorney, Mr.

10  Anderson.  Also present is Samuel Sigelman

11  representing --

12          MR. SIGELMAN:  Franzen Bank & Trust,

13  formerly known as Northern National Bank.

14          TRUSTEE RUNNING:  Raise your right hands,

15  please.  Do you solemnly swear or affirm the

16  testimony you're about to give is the truth?

17          DONNA WICZEK:  Yes.

18          STEPHEN WICZEK:  Yes.

19          TRUSTEE RUNNING:  State your names and

20  address.

21          DONNA WICZEK:  Donna Lorraine Wiczek.

22  1151 Shaeffers Point Road, Lake Shore, Minnesota

23  56468.

24          STEPHEN WICZEK:  Steve Wiczek.  1151

25  Shaeffers Point Road, Lake Shore, Minnesota 56468.

                                                    4


1          TRUSTEE RUNNING:  Did you read the

2  bankruptcy information sheet?

3          STEPHEN WICZEK:  Yes.

4          DONNA WICZEK:  Yes.

5          TRUSTEE RUNNING:  Did you sign the papers

6  that were filed with the Court?

7          STEPHEN WICZEK:  Yes.

8          DONNA WICZEK:  Yes.

9          TRUSTEE RUNNING:  Did you read those

10  papers before you signed them?

11          DONNA WICZEK:  Yes.

12          STEPHEN WICZEK:  Yes.

13          TRUSTEE RUNNING:  Are you familiar with

14 all of the information contained in those papers?

15       DONNA WICZEK: Yes.

16       STEPHEN WICZEK: Yes.

17       TRUSTEE RUNNING: Is it accurate?

18       DONNA WICZEK: Yes.

19       STEPHEN WICZEK: Yes.

20       TRUSTEE RUNNING: Any mistakes you've

21 noticed?

22       STEPHEN WICZEK: No.

23       TRUSTEE RUNNING: Have you listed all of

24 your assets and all of your debts?

25       DONNA WICZEK: Yes.

                                      5

1       STEPHEN WICZEK: Yeah.

2       TRUSTEE RUNNING: Have you ever filed a

3 prior bankruptcy?

4       STEPHEN WICZEK: Not personal.

5       TRUSTEE RUNNING: Do either of you owe

6 child support to anyone?

7       DONNA WICZEK: No.

8       STEPHEN WICZEK: No.

9       TRUSTEE RUNNING: Have either of you

10 created a trust in the last ten years?

11       DONNA WICZEK: No.

12       STEPHEN WICZEK: No.

13       TRUSTEE RUNNING: Did you -- did you get

14 the lift stayed --

15       MR. ANDERSON: Yes.

16       TRUSTEE RUNNING: -- yesterday? I didn't

17 get -- it didn't pull in when I pulled this before

18 so --

18          STEPHEN WICZEK:  No.

19          TRUSTEE RUNNING:  In the 90 days prior to

20     filing, did anyone take any money from your wages or

21     your bank accounts?

22          STEPHEN WICZEK:  No.

23          TRUSTEE RUNNING:  In the 90 days prior to

24     filing, did you pay any one unsecured creditor $600

25     or more?

                                                    12


1          STEPHEN WICZEK:  No.  I don't know.

2          MR. ANDERSON:  Since the commercial filing

3     (inaudible) $5,000.

4          TRUSTEE RUNNING:  What's the 12,000 that

5     went into Gull Lake Properties?

6          STEPHEN WICZEK:  Well, that was money I

7     transferred to Gull Lake Properties for an interest

8     payment.

9          TRUSTEE RUNNING:  All right.  So tell me

10    about that indebtedness.

11         STEPHEN WICZEK:  The Gull Lake Properties?

12    That's the campground.

13         TRUSTEE RUNNING:  All right.  Did you

14    personally pay $12,000 on the Gull Lake Properties

15    loan?  Is that what you're testifying?

16         STEPHEN WICZEK:  Yeah.  Yes.

17         TRUSTEE RUNNING:  When?

18         STEPHEN WICZEK:  I don't know the exact

19    date.  That's a monthly expense.

20         TRUSTEE RUNNING:  To who?

21         STEPHEN WICZEK:  Profinium.

22         TRUSTEE RUNNING:  Why wasn't it paid by

                         Page 10

23  Gull Lake Properties?

24          STEPHEN WICZEK:  The Gull Lake Properties

25  I -- you know --

                                              13


1           MR. ANDERSON:  Is that what all the

2   shareholders do?

3           STEPHEN WICZEK:  Say that again?

4           MR. ANDERSON:  Do the shareholders pay it?

5           STEPHEN WICZEK:  Yeah, the shareholders

6   pay.  You know, I mean, obviously we're carrying the

7   debt, just to keep it alive.

8           TRUSTEE RUNNING:  In the 90 days prior to

9   filing, did you sell, transfer, or give anything

10  away?

11          STEPHEN WICZEK:  I transferred, um, money

12  into the Nisswa Marine from Falls Flag Source.

13          TRUSTEE RUNNING:  How much?

14          STEPHEN WICZEK:  39 or 40,000.  I don't --

15  I think that was it.  I have that here.

16          DONNA WICZEK:  Thirty two.

17          STEPHEN WICZEK:  Okay, 32.  (Inaudible.)

18          TRUSTEE RUNNING:  So the 32 went where?

19          STEPHEN WICZEK:  Into our Chapter 11

20  company, Nisswa Marine.

21          TRUSTEE RUNNING:  For what purpose?

22          STEPHEN WICZEK:  To keep the company in

23  business.

24          TRUSTEE RUNNING:  Why isn't it disclosed

25  in the Schedules?

                                              14

 6  they're going to answer the questions and you're not

 7  going to testify.

 8          MR. ANDERSON:  I won't.  But I want to

 9  make sure that they understand it.

10          STEPHEN WICZEK:  I don't understand the

11  question.

12          TRUSTEE RUNNING:  We'll make sure --

13          MR. SIGELMAN:  We'll try again.  It's fair

14  to say that in your Statement of Financial Affairs

15  you listed your wages, year to date, at 15,384.62

16  from Nisswa Marine; correct?

17          STEPHEN WICZEK:  I don't -- I don't think

18  that's correct.

19          MR. SIGELMAN:  I'll show you a copy of

20  your Schedules, if that would help.

21          STEPHEN WICZEK:  Thank you.  Oh, okay.

22          MR. SIGELMAN:  Is that --

23          STEPHEN WICZEK:  The year to date to the

24  14th you're saying?

25          MR. SIGELMAN:  Of September -- well,

                                                    16


 1  that's the date you filed was September 14th, 2010;

 2  correct?

 3          DONNA WICZEK:  Correct.

 4          STEPHEN WICZEK:  Yeah.

 5          MR. SIGELMAN:  And so you maintain that

 6  you received just over $15,000 in wages from Nisswa

 7  Marina, year to date, from January 1st, 2010 to

 8  September 14, 2010; correct?

 9          STEPHEN WICZEK:  I would say whatever's

10  listed here should be correct.

11          MR. SIGELMAN:  All right.

12          DONNA WICZEK:  Yeah.

13          STEPHEN WICZEK:  You know that better than

14   I do.

15          MR. ANDERSON:  Obviously they've not been

16   taking wages to keep the company --

17          MR. SIGELMAN:  All right.  Take a look at

18   that.  I'll represent to you, Mr. Wiczek, that this

19   was a document provided to my offices, in connection

20   with the Chapter 11 proceeding, that you referenced

21   earlier, with Nisswa Marine, Inc., and it was

22   represented to our offices that this is a payroll

23   summary that includes the August 20th, excuse me,

24   August 20th, 2010 payroll from year to date.  And it

25   appears that your salary and wage was 111,000 500 --

                                                    17


1    excuse me, $111,538.50.  Do you see that?

2           STEPHEN WICZEK:  I see this here, yeah.

3           MR. SIGELMAN:  Okay.  How do you reconcile

4    your disclosure in your bankruptcy filing with this

5    payroll journal that was provided by your company?

6           STEPHEN WICZEK:  I guess it must be a --

7    there must be a mistake.  Obviously I wouldn't

8    knowingly do that, knowing that this is all

9    available.  Especially for what I've been through in

10   the last 24 months of my life.  You would have to

11   agree with that, I'm sure, Sam.

12          MR. SIGELMAN:  I'm not here to answer --

13          STEPHEN WICZEK:  It must be a mistake, I'm

14   sorry.

15          MR. SIGELMAN:  What's the mistake?  Is the

23         TRUSTEE RUNNING: In the 90 days prior to

24  filing, did you pay any one creditor either $600 for

25  consumer debt or $5,500 for a business debt?

32

1         STEPHEN WICZEK: I guess that would be yes

2  then.

3         TRUSTEE RUNNING: Yep, the $12,000

4  payment. Anything other than that, and the $32,000

5  payment?

6         STEPHEN WICZEK: No.

7         TRUSTEE RUNNING: Anything in addition to

8  those?

9         STEPHEN WICZEK: No.

10        TRUSTEE RUNNING: Ma'am?

11        DONNA WICZEK: No.

12        TRUSTEE RUNNING: In the 90 days prior to

13  filing, did you sell, transfer, or give anything

14  away?

15        STEPHEN WICZEK: No.

16        DONNA WICZEK: No.

17        TRUSTEE RUNNING: In the year prior to

18  filing, did you repay a friend, family member, or an

19  affiliate --

20        STEPHEN WICZEK: No.

21        DONNA WICZEK: No.

22        TRUSTEE RUNNING: -- on any indebtedness,

23  other than what's already been admitted here at the

24  hearing today?

25        DONNA WICZEK: No.

33

1         TRUSTEE RUNNING: Sir?

2          STEPHEN WICZEK:  No, I said.

3          TRUSTEE RUNNING:  In the six years prior

4  to filing, did you sell, transfer, or give

5  anything --

6          STEPHEN WICZEK:  No.

7          TRUSTEE RUNNING:  I haven't asked the

8  question.  Affiliate, friend, family member.  Are

9  you irritated, sir?

10          STEPHEN WICZEK:  No.

11          TRUSTEE RUNNING:  Okay.  Friend, family

12  member, or affiliate.

13          STEPHEN WICZEK:  No.

14          DONNA WICZEK:  No.

15          TRUSTEE RUNNING:  Deeded away any

16  property?

17          STEPHEN WICZEK:  No.

18          TRUSTEE RUNNING:  Paid anything?

19          DONNA WICZEK:  No.

20          STEPHEN WICZEK:  No.

21          TRUSTEE RUNNING:  Do you have any

22  additional questions, Mr. Sigelman?

23          MR. SIGELMAN:  I think we covered them.

24          TRUSTEE RUNNING:  I'm not going to

25  conclude -- I'm going to do a 2004 Exam, but just

1  the same, I'm not going to conclude the hearing

2  today, so --

3          MR. ANDERSON:  How many cracks at him do

4  you want?

5          (This concludes the transcription of the

6  CD.)